IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASHLEY ALVAREZ, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-24-722 |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | | |

***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion to Dismiss Plaintiffs Ashley Alvarez and Mark Sowell's Amended Complaint (ECF No. 48)[1]; Plaintiffs' Motion for Court-Authorized Notice under 29 U.S.C. § 216(b) (ECF No. 50); Plaintiffs' Motion to Seal (ECF No. 52); GEICO's Motion to Strike Declaration Testimony (ECF No. 64); and GEICO's Motion to Seal (ECF No. 66). The Motions are ripe for disposition, and no hearing is necessary. See

---

[1] Also pending is GEICO's Motion to Dismiss Plaintiffs' original Complaint in this case, (ECF No. 27), and GEICO's Motion to Un-relate and Reassign this Case, (ECF No. 42). Because Plaintiffs filed an Amended Complaint on April 24, 2024, (ECF No. 43), GEICO's first Motion to Dismiss (ECF No. 27) will be denied as moot. See Due Forni LLC v. Euro Rest. Solutions, Inc., No. PWG 13-3861, 2014 WL 5797785, at *2 (D.Md. Nov. 6, 2014) (finding that an amended complaint generally moots a pending motion to dismiss the original complaint because the original complaint is superseded). GEICO's Motion to Un-relate and Reassign this Case, (ECF No. 42), will also be denied. The Court finds that Plaintiffs offer sufficient factual overlap between this case and Biscardi v. Gov't Emps. Ins. Co., No. GLR-21-2240 to support their argument that the two cases "arise from the same or identical transactions, happenings, or events." (Pls.' Opp'n Def.'s Mot. Un-Relate and Reassign Case at 4–5, ECF No. 47 (quoting Local Rule 103.1(b)(i))); Cf. U.S. v. Janati, 374 F.3d 263, 273 (4th Cir. 2004) ("district courts have wide-ranging control over management of their dockets.").

Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant in part and deny in part GEICO's Motion to Dismiss (ECF No. 48), deny GEICO's Motion to Seal (ECF No. 66), and deny GEICO's Motion to Strike (ECF No. 64). The Court will also grant in part and deny in part Plaintiffs' Motion for Court-Authorized Notice under 29 U.S.C. § 216(b) (ECF No. 50), and deny Plaintiffs' Motion to Seal (ECF No. 52).

## I.   BACKGROUND[2]

### A.   <u>Factual Background</u>

This action arises out of GEICO's alleged violations of the Fair Labor Standards Act ("FLSA"), California Labor Code, California Business and Professions Code, and Massachusetts Wage Law. (Am. Compl. at 25–34, ECF No. 43).[3] Plaintiffs bring this action on behalf of themselves and all others similarly situated.

GEICO is a Maryland corporation and insurance provider. (Am. Compl. ¶¶ 45, 106). It maintains ten regional offices, (<u>id.</u> ¶ 46), and "operates in all fifty states, including California and Massachusetts," (<u>id.</u> ¶ 1). Plaintiffs Ashley Alvarez and Mark Sowell worked as Special Investigators for GEICO from February 2019 to August 2021 and May 2017 to August 2021, respectively. (<u>Id.</u> ¶¶ 9, 31). During their tenure with GEICO, Alvarez

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint, (ECF No. 43), and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

was assigned to the California office,[4] while Sowell reported to the New York office.[5] (Id. ¶¶ 9, 31).

As Special Investigators, Plaintiffs' "job was to investigate [and document] claims of suspected insurance fraud." (Am. Compl. ¶ 2). Their duties included:

> [R]eviewing case files; running background checks; examining provider billing reports; driving out to medical facilities, accident scenes, or theft sites; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about their findings in cases.

(Id.).

Plaintiffs allege that GEICO knowingly and willfully required them to work overtime without compensation. (See Am. Compl. ¶¶ 5, 6, 107, 111–12). GEICO "assigned Special Investigators an ever-increasing workload, knowing this work would require substantially more than 40 hours per week to complete" but "routinely denied permission [to work overtime] . . . and actively deterred Special Investigators from reporting overtime." (Id. ¶ 3). GEICO's performance standards were structured such that Special Investigators were forced to "meet a battery of . . . metrics to remain in good standing— metrics that could only be satisfied by working substantial overtime hours." (Id. ¶ 4). GEICO allegedly pressured Special Investigators not to report their overtime hours by providing disciplinary action, including lower performance ratings, to those who failed to

---

[4] Alvarez also lived in Florida for one year where she was assigned to GEICO's Lakeland, Florida office. (See Am. Compl. ¶ 9, ECF No. 43).

[5] Sowell worked remotely either in the field or from his home in Holyoke, Massachusetts. (Id. ¶ 31).

complete their workload within 7.75 hours per day. (<u>See</u> <u>id.</u> ¶¶ 4, 108, 109). As a result, "Special Investigators worked off the clock and did not report those hours in GEICO's timekeeping system." (<u>Id.</u> ¶ 4).

Plaintiffs Alvarez and Sowell allege that during full workweeks, Alvarez generally worked "54.5 hours per week" and Sowell worked "approximately 60 hours," [6] but neither were permitted to "report more than 7.75 hours per day (adding up to 38.75 hours per week)." (Am. Compl. ¶¶ 20–21, 28, 39, 41). For example, on one occasion when Alvarez "enter[ed] more than 38.75 hours" into the timekeeping system, (<u>id.</u> ¶ 28), her supervisor, Eduardo Lopez, "altered her timecard so that it only reflected 38.75 hours for that workweek." (<u>Id.</u>). When questioned about the alteration, Lopez informed Alvarez that "he would not approve her overtime request and that she should not enter more than 7.75 hours per day into the timekeeping system." (<u>Id.</u>). With "rare exceptions," GEICO did not pay Alvarez nor Sowell "for all hours worked in excess of 38.75 hours per workweek." (<u>Id.</u> ¶¶ 21, 42).

Alvarez maintains that her "extreme workload" "rarely" afforded her an opportunity to take a rest or lunch break. (<u>See</u> Am. Compl. ¶¶ 17–18, 24). When Alvarez told her manager, Cory Forseth, "that GEICO's demands [ ] interfere[ed] with her ability to take meal and rest breaks[,]" she was told that she "could use her time driving between client meetings to eat or take a break." (<u>Id.</u> ¶ 25). Regardless, Forseth instructed Alvarez to "enter

---

[6] Alvarez specifically "recalls working approximately 55 hours during the week of . . . November 23, 2020," (Am. Compl. ¶ 20), and Sowell recalls "working approximately 60 hours" during the week of July 6, 2020," (<u>id.</u> ¶ 41).

her time as though she had taken the full meal and rest breaks." (<u>Id.</u>). Accordingly, Alvarez "continued to enter breaks and meal periods in GEICO's timekeeping system even on days when she was not able to take them." (<u>Id.</u>).

In or around July of 2021, Alvarez, again, expressed "concerns about her overtime hours and workload during a video teleconference call with Lopez and René Cubas, the Region[al] Manager." (<u>Am. Compl.</u> ¶ 29). This time, her superiors placed her "on an action plan" and instructed her to "simply . . . complete the work within 7.75 hours each day." (<u>Id.</u>). As a result, "Alvarez submitted her two-weeks' notice shortly thereafter and left GEICO in August 2021." (<u>Id.</u>).

## B.   <u>Procedural History</u>

On March 11, 2024, initial Plaintiffs Alvarez and Sowell filed their original Class Action Complaint and Demand for Jury Trial against GEICO on behalf of themselves and similarly situated individuals.[7] (ECF No. 1). Alvarez and Sowell later filed several Notices

---

[7] Alvarez and Sowell separate potential plaintiffs into three different classes: (1) the Fair Labor Standards Act (FLSA) Collective; (2) the California Class; and (3) the Massachusetts Class. (<u>See</u> Compl. ¶¶ 47, 54, 75, ECF No. 1) (The FLSA Collective is defined as "All current and former non-exempt classified employees of GEICO who worked as Special Investigators (including comparable roles with different titles) throughout the United States, excluding New York, during the time period from three years prior to the filing of the [C]omplaint until resolution of this action." The California Class is defined as "all similarly situated Special Investigators who worked for GEICO in California during the period between four years prior to the filing of this Complaint and the date of final judgment in this matter." The Massachusetts Class is defined as "all similarly situated Special Investigators who worked for GEICO in Massachusetts during the period between three years prior to the filing of the original Complaint and the date of final judgment in this matter."). These class definitions remain largely unchanged in the Amended Complaint. (<u>See</u> Am. Compl. ¶¶ 57, 64, 85).

of Consent to join twelve Opt-In Plaintiffs.[8] (ECF Nos. 6–10, 24, 34). On April 12, 2024,

GEICO filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 27). Plaintiffs

filed an Amended Complaint on April 24, 2024 (ECF No. 43). They assert eight causes of

action against GEICO for: unpaid overtime wages under the Fair Labor Standards Act,

California Wage Laws, and Massachusetts Wage Laws (Claims One, Two, and Seven);

record keeping violations under California Wage Laws (Claim Three); meal and rest period

violations under California Wage Laws (Claim Four); untimely payment of wages under

California Wage Laws and Massachusetts Wage Laws (Claims Five and Eight); and unfair

competition under California Wage Laws (Claim Six).[9] (Am. Compl. at 25–34). Plaintiffs

seek damages, as well as declaratory, injunctive, and equitable relief. (Id. at 35).

GEICO filed the instant Motion to Dismiss on May 8, 2024. (ECF No. 48). Plaintiffs

filed their Opposition on May 22, 2024, (ECF No. 57), and GEICO filed its Reply on June

5, 2024, (ECF No. 60). Plaintiffs also filed a Motion for Court-Authorized Notice. (ECF

No. 50). GEICO filed an Opposition to the Motion for Court-Authorized Notice, (ECF No.

61), and moved to strike the declarations submitted in support thereof, (ECF No. 64). On

June 25, 2024, Plaintiffs filed a Reply in support of their Motion for Court-Authorized

Notice and an Opposition to GEICO's Motion to Strike. (ECF Nos. 67, 68).

---

[8] Opt-In Plaintiffs include: Kathleen Austin, Danielle Ennis, Dave Rosenthal,
Amanda Martin, Dennis Macaulay, Alexa Loscalzo, Gabrielle Parker, Jamie Robb,
Lindsay Shaffer, Dustin Watson, Michael Kastelic, Cory Ashby, John Vaz, and Todd
Machtley. (ECF Nos. 6-10, 12, 13, 24, 34, 53). On April 19, 2024, Alexa Loscalzo and
Dennis Macaulay were voluntarily dismissed from this action. (ECF No. 41).

[9] Alvarez brings the California law claims on behalf of herself and potential
California class members. (Am. Compl. ¶ 64). Sowell brings the Massachusetts law claims
on behalf of himself and potential Massachusetts class members. (Id. ¶ 85).

## II.   DISCUSSION

**A.**   **Motion to Dismiss**

**1.**   **Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268

(1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### 2.    Analysis

GEICO argues that Plaintiffs' Amended Complaint should be dismissed in part because some of Plaintiffs' claims are time barred and also because Plaintiffs fail to meet their burden of pleading facts sufficient to support a claim for relief. (Def.'s Mem. Supp. Mot. Dismiss First Am. Compl. ["Mot. Dismiss"] at 10, 14, ECF No. 48-1). As discussed more fully below, the Court will grant GEICO's Motion to Dismiss Claims Two, Three, Four and Five, but will deny the Motion as to all other claims.

### a.    Statute of Limitations

GEICO raises the statute of limitations as an affirmative defense to Alvarez's California Labor Code violations.[10] (See Mot. Dismiss at 14–15). As a threshold matter, the Court will first address whether those claims were timely filed.

---

[10] Alvarez brings four claims under the California Labor Code on behalf of herself and the California Class: (1) unpaid overtime wages, Cal. Lab. Code §§ 510, 1194, 1198; (2) inaccurate wage statements, Cal. Lab. Code §§ 226, 1174, 1174.5; (3) meal and rest period violations, Cal. Lab. Code §§ 218.5, 226.7, 512; and (4) untimely payment of wages, Cal. Lab. Code §§ 204, 210. (See Am. Compl. ¶¶ 64, 67).

The statute of limitations for wage-related claims under the California Labor Code is three years for actual damages[11] and one year for statutory penalties.[12] California's Supreme Court has held that the California Labor Code generally does not apply to work performed outside California. See Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1208 (2011) (finding that California-law based claim did not apply to "overtime worked in other states").

Plaintiff Alvarez alleges that she was employed by GEICO's California office between February 2019 and June 2020. (Am. Compl. ¶ 9). "She then lived in Orlando, Florida and was assigned to GEICO's Lakeland, Florida office from June 2020 to August 2021." (Id.). Because Alvarez's California-based injuries occurred at the latest in June 2020, when she was last employed by GEICO's California office, and she did not bring her claim against GEICO until March 2024, (see generally Compl., ECF No. 1), the Court finds that these causes of action are time barred. Therefore, Alvarez's California Labor Code claims for unpaid overtime wages, inaccurate wage statements, meal and rest break

---

[11] See Gasperin v. DSB Furnishing Décor Inc., No. RS 8-4477, 2011 U.S. Dist. LEXIS 173556, at *5 (N.D. Cal. June 23, 2011) (finding that unpaid overtime claims under California law are subject to a three-year statute of limitations); Novoa v. Charter Commc'ns., LLC, 100 F.Supp.3d 1013, 1024–25 (E.D.Cal. 2015) (applying three-year statute of limitations to Plaintiff's wage statement claim); Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094, 1102 (2007) (affirming use of a three-year statute of limitations for claims under California Labor Code § 226.7 for missed meal/rest periods); Turner v. Amazon.Com Servs. LLC, 2024 U.S. Dist. LEXIS 137632, at *3 (C.D.Cal. Aug. 1, 2024) (discussing the California Labor Code's three-year statute of limitations).

[12] See Dalton v. Lee Publ'ns, Inc., No. BTM 8-1072, 2009 WL 57113, at *2 (S.D.Cal. Jan. 8, 2009) ("A one year statute of limitations period applies to Plaintiffs' claims for penalties under [the] California Labor Code[].").

violations, and untimely payment of wages must be dismissed. Accordingly, GEICO's Motion to Dismiss Claims Two, Three, Four, and Five will be granted.

**b.     Unpaid Overtime Wages (Claims One and Seven)**

Plaintiffs allege that GEICO failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and Massachusetts Wage Laws.[13] (Am. Compl. ¶¶ 125, 136, 162). GEICO asserts that Plaintiffs' allegations do not satisfy the Rule 8 pleading standard. (Mot. Dismiss at 5). At this stage, the Court agrees with Plaintiffs.

Congress enacted FLSA "to protect all covered workers from substandard wages and oppressive working hours." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1031–32 (4th Cir. 2020) (quoting Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)). The statute generally requires employers to pay one and one-half times the hourly wage for every hour over 40 hours that an employee works during a workweek. See 29 U.S.C. § 207(a)(1). To plead a FLSA claim, the Fourth Circuit has held that a plaintiff must present sufficient facts to support a reasonable inference that: (1) the employee worked more than 40 hours in a workweek; and (2) the employer failed to pay the employee the requisite overtime premium for his overtime hours.[14] See Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017).

---

[13] Plaintiff Sowell brings the Massachusetts Class allegation for unpaid overtime under Massachusetts Gen. L. ch. 151 §§ 1A, 1B. (Am. Compl. ¶¶ 85, 158).

[14] Because Massachusetts district courts apply FLSA requirements to Massachusetts Wage Act violations, the Court also analyzes Plaintiff Sowell's Massachusetts law claim for unpaid overtime under the FLSA framework. See Lambirth v. Advanced Auto, Inc., 140 F.Supp.3d 108, 112 (D.Mass. 2015) (finding that the Wage Act "applies to the untimely payment of all wages to which an employee is entitled under either state or federal law.").

Plaintiffs in <u>Hall</u> satisfied this standard by describing their employment compensation scheme with "each Plaintiff alleging that he typically worked in excess (and, in some cases, well in excess) of forty hours per week[,]" and by providing estimates of their weekly hours and pay. 846 F.3d at 777–78. The court also provided an example of another acceptable approach, in which a plaintiff established a FLSA claim by alleging that she "'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours." <u>See</u> <u>id.</u> at 777.

While a plaintiff must do more than merely allege that they failed to receive overtime, he or she is not required "to identify a <u>particular</u> week in which they worked uncompensated overtime hours." <u>Hall</u>, 846 F.3d at 777. Instead, plaintiffs are required "to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" <u>Id.</u> (quoting <u>Dejesus v. HF Mgmt. Servs., LLC.</u>, 726 F.3d 85, 90 (2nd Cir. 2013)). The Fourth Circuit acknowledged the difficulty of pleading precise scheduling and wages because "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants" at the pleading stage. <u>Id</u>. at 776.

Here, Plaintiffs' allegations are more than sufficient to satisfy the pleading standard as outlined by <u>Hall</u>. Plaintiffs not only describe their employment compensation scheme and provide estimates of their hours and pay,[15] (<u>see</u> Am. Compl. ¶¶ 11–12, 16, 35–36), but

---

[15] Alvarez asserts that during full workweeks, she worked "approximately 54.5 hours per week," and Sowell states that "his assignments required him to regularly work approximately 60 hours per week." (Am. Compl. ¶¶ 20, 41). Yet, regardless of the number

they also provide details about the nature of GEICO's practices and polices that resulted in uncompensated overtime work. (See id. ¶¶ 2–4, 11, 12, 34–36, 107). Some of these practices include assigning Special Investigators "an ever-increasing workload, knowing this work would require substantially more than 40 hours per week to complete[,]" but "routinely den[ying] permission [for overtime] when asked." (Id. ¶ 3). For example, at the start of the COVID-19 pandemic, GEICO nearly doubled Alvarez's workload. (Id. ¶ 19). Yet, when Alvarez entered her overtime hours, her "supervisor, Eduardo Lopez, altered her timecard so that it only reflected 38.75 hours for that workweek." (Id. ¶ 28). Despite their increasing caseloads, Plaintiffs were repeatedly instructed not to "enter more than 7.75 hours per day into the timekeeping system." (Id. ¶¶ 16, 28, 36). Notably, Plaintiffs allege that GEICO's evaluation system metrics provided lower evaluation scores and other disciplinary measures to those who reported overtime. (See id. ¶¶ 4, 109). Taken together, these facts alone are sufficient to nudge Plaintiffs' Amended Complaint from conceivable to plausible.

Although not required under the Fourth Circuit's liberal approach, Plaintiffs also list specific weeks in which they were uncompensated for their overtime hours.[16] See Hall, 846 F.3d at 777–78 (noting that plaintiffs are not required "to identify a particular week in which they worked uncompensated overtime hours."). These details, along with other

---

of hours worked, "[w]ith rare exceptions . . . GEICO did not pay [Plaintiffs] . . . in excess of 38.75 hours per workweek." (Am. Compl. ¶¶ 21, 42).

[16] Alvarez worked "approximately 55 hours per week during the week[] of . . . November 23, 2020", and Sowell worked "approximately 60 hours" during the week of July 6, 2020. (Am. Compl. ¶¶ 20, 41).

information concerning GEICO's policies and practices, are comparable with, and arguably exceed, the level of detail offered by the plaintiffs in Hall. See 846 F.3d at 778. ("each Plaintiff provides an approximation of his general workweek, with each Plaintiff alleging that he typically worked in excess (and, in some cases, well in excess) of forty hours per week."). Therefore, at this stage, Plaintiffs have sufficiently alleged a plausible claim for unpaid overtime under FLSA and Massachusetts Gen L. ch. 151 § 1A. Accordingly, the Court will deny GEICO's Motion to Dismiss Claims One and Seven.

### c.    Unfair Competition Claim (Claim Six)

Plaintiff Alvarez's California Unfair Competition Law ("UCL") claim is predicated on GEICO's failure to provide overtime wages in violation of FLSA. (See Am. Compl. ¶ 153).[17] Because the Court concluded that Alvarez plausibly alleged a predicate violation, (see supra Section II.A.2.b.), her UCL claim necessarily survives. See Benge v. Off. Depot, LLC, No. DJC 24-749, 2024 WL 3794038, at *4 (E.D.Cal. Aug. 13, 2024).

California's UCL prohibits the use of "any unlawful, unfair, or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. The UCL functions as a three-pronged statute, where each adjective—unlawful, unfair, or fraudulent—captures a separate and distinct theory of liability. See Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th Cir. 2016). "The UCL's 'unlawful' prong looks to other sources of substantive

---

[17] In the Amended Complaint, Alvarez asserts FLSA and various California Labor Code violations as the underlying cause of action for her UCL claim. (Am. Compl. ¶ 153). However, because the Court finds that Alvarez's California Labor Code claims are time barred, it only considers the FLSA claim as a predicate for the UCL claim. See Slick v. CableCom, LLC, No. JSC 22-3415, 2022 WL 4181003, at *3–4 (N.D.Cal. Sept. 12, 2022).

law . . . to proscribe the kinds of unlawful business practices punishable under the statute." Id. In doing so, it creates a derivative cause of action based on violations of other state and federal laws. See Russo v. Fed. Med. Servs., No. 24-748, 2024 U.S. Dist. LEXIS 142108, at *15–16 (N.D.Cal. Aug. 9, 2024). "Thus, a UCL claim generally accrues when each of the elements of the underlying cause of action is satisfied." Id. at 16 (cleaned up).

In other words, when a plaintiff adequately pleads the predicate violation for a UCL claim, California district courts generally permit the UCL claim to survive. See, e.g., id. (plaintiff can establish defendant's liability under the UCL "as long as the underlying cause of action can be alleged against them").

Here, Alvarez's FLSA violation for unpaid overtime wages, which serves as the basis for her UCL claim,[18] has been adequately alleged therefore the Court finds that her UCL claim is also adequate. See Toranto v. Jaffurs, 297 F.Supp.3d 1073, 1105–06 (S.D.Cal. 2018) (declining to dismiss claims under the "unlawful" prong of the UCL because a Sherman Act violation had been adequately pleaded against the individual defendant). Accordingly, the Court will deny GEICO's Motion to Dismiss as to Claim Six.

---

[18] California district courts have found that federal violations may serve as the predicate for UCL claims. Robinson v. Open Top Sightseeing San Francisco, LLC, No. PJH 14-852, 2017 WL 2265464, at *3 (N.D.Cal. May 24, 2017) ("Many courts have permitted UCL claims to be predicated on FLSA violations . . . This is logical because virtually any law, federal, state, or local can serve as a predicate for an action under the UCL.") (quoting Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal.App.4th 700, 718 (2001) (internal quotations omitted) (cleaned up).

###### d.      Untimely Payment of Wages (Claim Eight)

Sowell alleges that GEICO violated Massachusetts Wage Laws[19] by failing to provide his overtime wages in a timely manner. (Am. Compl. ¶ 173). GEICO counters that this claim should be dismissed because Sowell fails to allege sufficient facts to support his claim. (Mot. Dismiss at 17). At bottom, the Court agrees with Sowell.[20]

Under the Massachusetts Wage Act, employers are generally required to pay workers their wages on a weekly or bi-weekly basis, within six to seven days after the close of the relevant pay period. See Mass. Gen. L. ch. 149 § 148; see also Fine v. Guardian Life Ins. Co. of Am., 589 F.Supp.3d 139, 150–51 (D.Mass. 2022). To state a claim for untimely wages, a plaintiff must allege that: (1) he was an employee under the statute; (2) his form of compensation constitutes a wage under the statute; and (3) the defendants violated the Act by not paying his wages in a timely fashion. See Fine, 589 F.Supp.3d at 151 (quoting Gallant v. Boston Exec. Search Assocs., Inc., No. FDS 13-12081, 2015 WL 3654339, at *6 (D.Mass. June 12, 2015)).

Here, the Court finds that all elements are satisfied. First, there is no dispute that Sowell was an employee within the meaning of the statute. (Am. Compl. ¶¶ 31, 34, 170; see also Mot. Dismiss at 18–19). Second, there is likewise no dispute that Sowell's compensation was a wage. (Am. Compl. ¶  35; see also Mot. Dismiss at 18–19). And third,

---

[19] Mass. Gen. L. ch. 149 §§ 148 and 150.
[20] Unlike Alvarez, Sowell alleges that he has executed a tolling agreement with GEICO which provides that his FLSA and state claims "would be tolled from the date of execution until 10 days after either party gives written notice of cancellation." (Am. Compl. ¶ 32). Accordingly, the Court finds that these claims are not time barred.

Sowell alleges that GEICO "failed to pay him for all hours worked in excess of 38.75 hours per workweek." (Am. Compl. ¶ 42). Massachusetts district courts have found similar facts sufficient to state a claim under the Wage Act claim. See Napert v. Gov't Emps. Ins. Co., No. FDS 2013 WL 3989645, at *2 (D.Mass. 2013) (holding that plaintiff adequately plead his Wage Act claim by alleging that he "was employed by GEICO; that he was not an exempt employee; and that . . . GEICO failed to pay him for time worked between 38.75 and 40 hours in a workweek"). (internal quotations omitted). Therefore, the Court finds Sowell's allegations sufficient to state a claim for relief under the Wage Act. Accordingly, GEICO's Motion to Dismiss as to Claim Eight will be denied.

**B.   <u>Motion to Strike</u>**

Before considering Plaintiffs' Motion for Court-Authorized Notice under 29 U.S.C. § 216(b), (ECF No. 50-1), the Court will first address GEICO's Motion to Strike as it raises a preliminary evidentiary issue. (ECF No. 64). GEICO urges the Court to strike declaration testimony submitted in support of Plaintiffs' Motion for Court-Authorized Notice because the declarations: (1) are not based on personal knowledge; (2) are inadmissible hearsay; and (3) contain invalid signatures which were improperly cured. (See Def.'s Mem. Supp. Mot. Strike ["Mot. Strike"] at 5, ECF No. 64-1). The Court rejects each of these arguments.

**1.   Personal Knowledge**

Declarations submitted at the notice stage "must be based on the personal knowledge" of the declarant. See Robinson v. Empire Equity Grp., No. WDQ 9-1603, 2009 WL 4018560, at *3 (D.Md. Nov. 18, 2009) (citation omitted). In this context, personal knowledge includes any information that an employee in the declarant's position "could

be expected to have acquired during their tenure[].” Alderoty v. Maxim Healthcare Srvcs., Inc., No. TDC 14-2549, 2015 WL 5675527, at *3 (D.Md. 2015).

Here, the Court finds that the statements at issue are based on the declarants' personal knowledge. The statements concern GEICO's alleged practices[21] or information that was “well known” within the company, such as GEICO's refusal to approve overtime work. (See Mot. Strike at 8). And while declarants do not explicitly set forth the circumstances under which they learned this information, the Court can reasonably infer that these details are the kinds of information that a GEICO employee would learn during the normal course of employment. See Alderoty, 2015 WL 5675527, at *3. Therefore, because these facts do not go beyond the universe of information that a GEICO employee could be expected to learn, the Court will not strike the declarations for lack of personal knowledge.[22]

## 2.    Inadmissible Hearsay

Given the “modest factual support” required at the notice stage, courts in this district have considered hearsay in supporting declarations when deciding motions for notice or

---

[21] (E.g., Mot. Strike at 8) (“GEICO required Special Investigators to submit information about our cases . . . and GEICO supervisors still had the option to deny overtime.”)

[22] The Court also rejects GEICO's claim that Plaintiffs' declarations “should be stricken because they rely upon . . . conclusory terms.” (Mot. Strike at 9–11). For example, GEICO seeks to strike an opt-in plaintiff's assertion that “[m]y managers and supervisors have repeatedly told me . . . that hours above 38.75 to complete regular case work would not be approved,” because it is vague and conclusory. (Caniglia Decl. ¶ 14, ECF No. 50-12; see Mot. Strike at 10–11). Yet, GEICO submitted a declaration in which a Senior Field Security Investigator made the comparable assertion that “I was told repeatedly to work only during my scheduled work hours.” (Ray Decl. ¶ 24, ECF No. 61-9). Accordingly, the Court declines to strike these statements on this basis.

conditional certification under § 216(b). Robinson, 2009 WL 4018560, at *3. See, e.g., Mazariegos v. Pan 4 Am., LLC, No. DLB 20-2275, 2021 WL 5015751, at *3 (D.Md. 2021) (finding that courts have granted conditional certification based on affidavits containing hearsay statements). Other districts have also affirmed this view. See White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 368 (E.D.Tenn. 2006), (declining to dismiss portions of affidavits that were based on hearsay because "at this preliminary stage . . . plaintiffs need not come forward with evidence in a form admissible at trial") (internal quotations omitted). Accordingly, the Court will not strike portions of the declarations because they contain inadmissible hearsay.

### 3. Invalid signatures

GEICO urges this Court to strike Plaintiffs Alvarez and Sowell's declarations, along with twelve additional declarations, because they were not signed in the proper format as required by this district's Electronic Case Filing General Procedures,[23] and Plaintiffs' efforts to cure their defects on reply fail under Federal Rule of Civil Procedure 6(c)(2). (See Mot. Strike at 15; Def's Reply Mot. Strike at 7, ECF No. 69).

The Court declines to strike Plaintiffs' resubmitted declarations on reply. First, Courts generally may exercise discretion to overlook violations of its local rules. See Dixon Lumber Co. v. Austinville Limestone Co., 256 F.Supp.3d 658, 666–67 (W.D.Va. 2017); see also Simmons v. Navajo Cty., 609 F.3d 1011, 1017 (9th Cir. 2010) (noting that

---

[23] Plaintiffs' original declarations were signed with typed names. (ECF Nos. 50-2 through 50-12). This Court's Electronic Case Filing General Procedures provides examples of acceptable non-attorney signature formats. See United Stated District Court, District of Maryland, https://www.mdd.uscourts.gov/content/non-attorney-signature-formats.

"[d]istrict courts have broad discretion in interpreting and applying their local rules") (quoting Miranda v. S. Pac. Transp. Co., 710 F.2d 516, 521 (9th Cir. 1983)); Ass'n for Retarded Citizens v. Thorne, 68 F.3d 547, 553–54 (2d Cir. 1995); El-Kaissi v. Martinaire, Inc., No. 03-cv-132, 2005 U.S. Dist. LEXIS 43417, at *6–9 (S.D.Tex. Nov. 3, 2005) (collecting cases suggesting that district courts have discretion to decide whether to overlook violations of their local rules).

Here, there is no indication that Plaintiffs' initial failure to comply with this district's signature requirements was an attempt to mislead the Court or operate in bad faith. Rather, Plaintiffs explain that many of the declarations were collected "during the pendency of an earlier action in another district that . . . has no local rule requiring 'wet' signatures." (Pls.' Opp'n Mot. Strike at 5 n.1, ECF No. 68). What is more, Plaintiffs cured their defect within three weeks of being made aware of their error. (Compare Mot. Strike at 11–14 with Resubmitted Declarations, ECF Nos. 67-1–67-11). Accordingly, the Court finds that good cause exists to overlook Plaintiffs' earlier failure to comply with local court rules.

Second, GEICO's argument that Federal Rule of Civil Procedure 6 does not permit a party to include a declaration with a reply brief is misplaced. Rule 6(c)(2) provides that "[a]ny affidavit supporting a motion must be served with the motion." But this rule does not prevent a party from attaching an affidavit or declaration to support their reply brief. Robinson, 2009 WL 4018560, at *2. Indeed, this Court has permitted affidavits to be submitted with a reply so long as they are responsive to an opposing party's argument. See Robinson, 2009 WL 4018560, at *2 (declining to strike affidavits attached to plaintiffs'

reply when they provided evidence of new opt-in plaintiffs because they were submitted in response to defendant's argument).

Here, just as in <u>Robinson</u>, Plaintiffs' declarations attached to their reply were submitted in direct response to GEICO's argument concerning the defective signatures. (<u>See</u> Mot. Strike at 15–18; Pls.' Opp'n Mot. Strike at 4). Moreover, the declarations submitted on reply in this case presented no information of which GEICO was not already aware. Thus, to the extent GEICO argues that they were "sandbagged" when Plaintiffs cured their defect, the Court is unconvinced. As a result, GEICO's Motion to Strike declaration testimony will be denied.

**C.**   **Motion for Court-Authorized Notice under 29 U.S.C. § 216(b)**

**1.**   **Standard of Review**

As stated earlier, Congress enacted the Fair Labor Standards Act ("FLSA") "to protect all covered workers from substandard wages and oppressive working hours." <u>Wai Man Tom v. Hosp. Ventures LLC</u>, 980 F.3d 1027, 1031–32 (4th Cir. 2020) (quoting <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 739 (1981)). When an employee sues their employer under this statute, he or she may sue as an individual or "in a collective action on behalf of themselves and similarly situated employees." <u>Biscardi v. Gov't Emps. Ins. Co.</u>, No. GJH 21-2240, 2023 WL 155238, at *2 (D.Md. Jan. 11, 2023) (quoting 29 U.S.C. § 216(b)) (internal quotation marks omitted). If a plaintiff pursues a collective action against an employer, they may seek court-authorized notice "to inform

similarly situated employees that they may join the litigation."[24] <u>Kneppar v. Elevance Health Companies, Inc.</u>, No. MJM 23-863, 2024 WL 1156406, at *2 (D.Md. Mar. 18, 2024) (quoting <u>Santos v. E&R Servs., Inc.</u>, No. DLB 20-2737, 2021 WL 6073039, at *2 (D.Md. Dec. 23, 2021)). It is left to the court's discretion to determine whether court-authorized notice is appropriate. <u>Boyd v. SFS Commc'ns, LLC</u>, No. PJM 15-3068, 2017 WL 386539, at *2 (D.Md. Jan. 27, 2017) (quoting <u>Syrja v. Westat, Inc.</u>, 756 F.Supp.2d 682, 686 (D.Md. 2010)).

When seeking the court's authorization to distribute notice to potential class members under 29 U.S.C. § 216(b), plaintiffs are required to make a minimal evidentiary showing that putative class members "are similarly situated, such that court-facilitated notice" to potential class members "would be appropriate." <u>Arnold v. Acappella, LLC</u>, No. BPG-15-3001, 2016 WL 5454541, at *2 (D.Md. Sept. 29, 2016) (quoting <u>Syrja</u>, 756 F.Supp.2d at 686). This process —also referred to as conditional certification of the class, <u>see</u> <u>Arnold</u>, 2016 WL 5454541, at *2—is step one of a two-stage certification process for FLSA collective actions, <u>Kneppar</u>, 2024 WL 1156406, at *2.

After the court conditionally certifies the class, the action proceeds on a provisional basis. See <u>Biscardi</u>, 2023 WL 155238, at *2. Following discovery, courts engage in a more

---

[24] Unlike a class action filed under Fed.R.Civ.P. 23, section 216 of the FLSA "establishes an opt-in scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." <u>Lee v. Solar Energy World, LLC</u>, No. RDB 19-1993, 2021 WL 915287, at *3 (D.Md. Mar. 10, 2021) (quoting <u>Quinteros v. Sparkle Cleaning, Inc.</u>, 532 F.Supp.2d 762, 771 (D.Md. 2008)).

stringent inquiry to determine whether to unconditionally certify the collective action. Boyd, 2017 WL 386539, at *2.

### 2.    Analysis

Plaintiffs seek to send notice under FLSA, 29 U.S.C. § 216(b), to inform "Special Investigators who worked for GEICO nationwide, except in New York,"[25] of their rights to join this lawsuit. (Pls.' Mem. Supp. Mot. Court-Authorized Notice ["Mot. Notice"] at 1, ECF No. 50-1). GEICO opposes the motion, arguing primarily that: (1) the Court should reject the two-step legal standard for FLSA conditional certification; (2) Plaintiffs fail to show that they and other members of the putative collective are similarly situated or that GEICO maintained any unlawful common policy or plan; (3) Plaintiffs' proposed notice is inappropriate; and (4) the Court should deny Plaintiffs' request for equitable tolling. (Defs.' Opp'n Mot. Court-Authorized Notice ["Opp'n Mot. Notice"] at 20, 26, 32, 33, ECF No. 61). The Court addresses each argument in turn.

### a.    Applicable Legal Standard

GEICO asks this Court to reject the two-step approach to FLSA collective action certification commonly applied by courts in this circuit and to instead employ the more "streamlined" approach adopted by the Fifth Circuit in Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021). (Opp'n Mot. Notice at 18–19).

---

[25] Plaintiffs exclude New York Special Investigators from this collective action because the Plaintiffs in Fischer v. Gov't Emps. Ins. Co., No. 23-2848 (E.D.N.Y. 2023) continue to pursue overtime claims on behalf of those workers. (Pls.' Mem. Supp. Mot. Court-Authorized Notice ["Mot. Notice"] at 6 n.1, ECF No. 50-1).

In Swales, the Fifth Circuit held that rather than adhere to a lenient test for conditional certification, courts should first "rigorously scrutinize" the facts and legal considerations that will be material to determining whether a group of employees is similarly situated. See Mazariegos, 2021 WL 5015751, at *3 (quoting Swales, 985 F.3d at 441). Afterwards, courts should allow preliminary discovery "to determine if and when to send notice to potential opt-in plaintiffs." Swales, 985 F.3d at 441.

Plaintiffs counter that this Court should reject the Fifth Circuit's approach because the two-step standard applied in this district is more consistent with "FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." (Pls.' Reply Supp. Mot. Notice ["Reply"] at 3, ECF No. 67 (quoting Jackson v. Am. Elec. Warfare Assocs., Inc., No. TDC 22-1456, 2023 WL 5154518, at *3 (D.Md. 2023))

The Court agrees with Plaintiffs. This district has found that in the typical putative collective action brought under the FLSA, the preliminary discovery required under Swales "would risk unduly delaying notice to potential plaintiffs." Kneppar, 2024 WL 1156406, at *3. What's more, GEICO has not pointed to any cases in this district where the Swales approach has been applied. See Biscardi, 2023 WL 155238, at *5 ("[T]he majority of courts within the Fourth Circuit have declined to impose such a heightened standard at the notice stage") (quoting McNeil v. Faneuil, Inc., No. HCM 15-81, 2016 WL 11673838, at *4 (E.D.Va. Aug. 3, 2016); see also Santos v. E & R Servs., Inc., No. DLB 20-2737, 2021 WL 6073039, at *3 (D.Md. Dec. 23, 2021) (citing "20 years of precedent applying the two-

stage certification process in FLSA cases"). Accordingly, the Court declines to depart from the more lenient two-step approach, as commonly applied.

**b.      Similarly Situated Plaintiffs & Common Plan**

GEICO argues that Plaintiffs should not be permitted to send notice because they fail to show that: (1) they are similarly situated to potential collective action members; or (2) that GEICO maintained an unlawful common policy or practice. (Opp'n Mot. Notice at 20, 26).

Individuals are similarly situated when they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from . . . similar . . . job requirements and pay provisions." Robinson, 2009 WL 4018560, at *3 (quoting Montoya v. S.C.C.P.P. Painting Contractors, Inc., No. CCB 07–455, 2008 WL 554114, at *2 (D.Md. Feb. 26, 2008) (quoting DeLunaGuerrero v. N.C. Growers' Ass'n, Inc., 338 F.Supp.2d 649, 654 (E.D.N.C. 2004) (cleaned up)). Plaintiffs do not have to show that the potential class members have identical positions for conditional certification. See Robinson, 2009 WL 4018560, at *3. Indeed, plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay. See id. Nevertheless, this is a limited inquiry because at this stage "courts are not to delve into the merits of the case." Biscardi, 2023 WL 155238, at *4 (quoting Blake v. Broadway Servs., Inc., No. CCB 18-86, 2018 WL 4374915, at *3 (D.Md. Sept. 13, 2018) (internal quotation marks omitted)).

The Court finds that Plaintiffs have made an adequate showing that they are similarly situated for this Court to conditionally certify the collective action and authorize

notice. First, the Amended Complaint alleges that GEICO failed to pay Special Investigators[26] unpaid overtime wages, and this failure affects workers in offices across the country. (Am. Compl. ¶¶ 3, 5, 7). Second, in their declarations, the nine opt-in plaintiffs who worked in "eleven GEICO offices across five different regions" all allege that GEICO's policies required them to perform work that was often not reflected in their paychecks. (Mot. Notice at 2). Plaintiffs also report similar pay practices—including "a weekly limit on reported time (38.75 hours)" and a "consistent pattern of management responses . . . ignoring employee concerns or addressing them outright with threats." (Mot. Notice at 13; see also ECF Nos. 50-2 through 50-11). Third, Plaintiffs' claims all appear to arise from similar job requirements of investigating insurance fraud. (Reply at 3).

In light of these facts, the Court finds that Plaintiffs have made a sufficient preliminary showing that employees in the putative collective are similarly situated. As discussed, Plaintiffs' burden at this stage is a lenient one, see Hoffman-La Roche, 493 U.S. 165, 170 (1989), and here, Plaintiffs have gone beyond simply alleging similarity in their Amended Complaint, having attached declarations and depositions that bolster their claims, see Quinteros, 532 F.Supp.2d at 772. This conclusion is also consistent with at least one other case in which conditional certification was granted for a similarly defined

---

[26] Plaintiffs use this phrase as an umbrella term to refer to insurance fraud investigators employed in GEICO's Special Investigations Unit. (Am. Compl. ¶ 2 n.2). The term refers to "Level 65 Special Investigators, Level 66 Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators." (Mot. Notice at 6 n.2). The Court recognizes that GEICO disputes the Special Investigator job title on the grounds that GEICO has never referred to employees using that term. (Opp'n Mot. Notice at 11).

putative collective action in a FLSA suit against GEICO. See, e.g., Biscardi, 2023 WL 155238, at *3 (approving conditional certification based on plaintiffs' allegations of pressure "to work-off-the clock" and avoid reporting overtime hours).

GEICO's argument that Court-Authorized Notice should be denied because Plaintiffs do not provide evidence of an unlawful policy demanding employees work off the clock, (Opp'n Mot. Notice at 20–21), is unpersuasive. "[E]mployees cannot be expected to have evidence of a stated policy of refusing to pay overtime," Quinteros, 532 F.Supp.2d at 772 (quoting Marroquin v. Canales, 236 F.R.D. 257, 260–61 (D.Md. 2006)). Instead, courts look to "factual evidence by affidavits or other means" to determine whether the threshold showing has been met. Chapman v. Ourisman Chevrolet Co., No. AW 08-2545, 2009 WL 10685449, at *3 (D.Md. Apr. 14, 2009).

In this case, Plaintiffs have provided numerous declarations that establish they personally worked at GEICO as Special Investigators at various locations around the country and that "they all were required to perform work that was often not reflected in their paychecks." Lancaster v. FQSR, No. TDC 19-2632, 2020 WL 5500227, at *4 (D.Md. 2020). Plaintiffs also indicate that "the same or similar tactics were employed by supervisors" to avoid the reporting of overtime work. Id. Taken together, this evidence is sufficient to suggest that there exists a class of similarly situated potential plaintiffs who were subject to a common plan that violated FLSA.[27]

---

[27] The Court notes GEICO's argument regarding the unmanageability of Plaintiffs' claims. (See Opp'n Mot. Notice at 28–32). Because the Court finds that Plaintiffs are allegedly non-exempt employees, (Am. Compl. ¶ 2), who are entitled to overtime compensation, but have been discouraged or disincentivized from reporting overtime, (id.

c.    **Proposed Notice**

Plaintiffs request that the Court authorize them to distribute notice of this lawsuit to members of the putative collective. (Mot. Notice at 16). More specifically, Plaintiffs seek to send notice by "U.S. mail, email, text message," (id. at 16), and to post the notice on a "standalone website," (id. at 17). They also request that halfway through the notice period "a reminder notice be sent by postcard, email, and text message to all Special Investigators who have not yet returned a consent-to-join form." (Id.). To facilitate distribution of the notice, they ask that the Court order GEICO to provide Plaintiffs with the contact information of Special Investigators within 14 calendar days of the date of this Order. (Mot. Notice at 17–18). GEICO maintains that the Court should reject Plaintiffs' proposed notice because "the form, manner, and timing of Plaintiffs' proposed notice" is improper. (Opp'n Mot. Notice at 32). Because Plaintiffs have included the proposed notice form and draft communications that they intend to distribute, (Proposed Notice, ECF No. 50-13; Proposed Email & Text Notice, ECF No. 50-14; Reminder Notice, ECF No. 50-15), the Court will consider Plaintiffs' requests and GEICO's objections, below.

Courts have broad discretion to determine "the details of the notice sent to potential opt-in plaintiffs." Mcfeeley v. Jackson St. Entm't, LLC, No. DKC 12-1019, 2012 WL 5928902, at *5 (D.Md. Nov. 26, 2012) (internal quotations omitted). Notice is required to

---

¶ 109), and may face potential disciplinary action or lower performance ratings if they do not complete their workload within regular working hours, (id. ¶ 4), the Court determines that "all members of the proposed class share at least a manageably similar factual setting with respect to job requirements and pay provisions." Biscardi, 2023 WL 155238, at *4 (quoting Njoroge v. PrimaCare Partners, LLC, No. BAH 22-0425, 2022 WL 4465894, at *5 (D.Md. Sept. 26, 2022)).

be "timely, accurate, and informative," so that potential plaintiffs can make informed decisions about whether to participate. Kneppar, 2024 WL 1156406, at *6 (quoting Hoffmann-La Roche, 493 U.S. at 170). The purpose of the notice is to make as many potential plaintiffs as possible "aware of the action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." Lazaar v. Anthem Cos., Inc., No. JGK 22-3075, 2023 WL 4113034, at *5 (S.D.N.Y. 2023) (cleaned up). At the same time, courts "must take care to avoid even the appearance of judicial endorsement of . . . the action." Id. (quoting Hoffman-La Roche, 493 U.S. at 174).

### i.    Notice Content

The Court determines that Plaintiffs' proposed notice form and communications are appropriate. The first page of the proposed notice states in large bold letters, "Collective Action Notice Authorized by the U.S. District Court." (Proposed Notice at 2). The notice provides a brief summary of both sides' positions, (id. at 6), along with instructions for potential plaintiffs to join the lawsuit, (id. at 7). Further, the notice form accurately indicates that "[t]here has been no decision in the case yet," (id. at 2), and informs prospective plaintiffs that GEICO denies any wrongdoing, (id. at 6). The notice also provides that participation in the litigation may require testifying, (id. at 7), but that potential plaintiffs may be excluded by simply ignoring the notice, (id. at 8). The proposed email and text message similarly describe Plaintiffs' allegations of unpaid overtime and GEICO's argument "that its employees are paid in compliance with all applicable overtime laws." (Proposed Email & Text Notice at 2). Importantly, the email and text notices also inform potential collective members that "[t]he Court has taken no position in this case

about the merits of the parties' claims and defenses." (Id. at 2). Because courts in this district have approved similar notices, see, e.g., Kneppar, 2024 WL 1156406, at *6, and GEICO failed to object to the content of Plaintiffs' notice, (see Opp'n Mot. Notice at 32–33), the Court finds that Plaintiffs' proposed notice form and communications are adequate.

### ii.    Opt-In Period

GEICO argues that the notice period for potential collective members to opt in to the lawsuit should be 45 days at most, while Plaintiffs request a 90-day opt-in period. (See Opp'n Mot. Notice at 32). Absent a persuasive argument otherwise, this Court has found that "[n]inety days is the standard notice period for potential plaintiffs to opt-in." Baylor v. Homefix Custom Remodeling Corp., 443 F.Supp.3d 598, 609 (D.Md. 2020). GEICO failed to provide a persuasive basis for the Court to deviate from the standard opt-in period, and none of the cases cited in support of its argument were from this district. Therefore, the Court finds that the opt-in period for potential plaintiffs will be 90 days.

### iii.    Contacting Potential Plaintiffs

GEICO maintains that Plaintiffs have failed to show a special need to send notice via email, text message, or a standalone website. (Opp'n Mot. Notice at 32–33). Rather, Plaintiffs should be limited to "sending notice by first-class mail." (Id. at 33). As Plaintiffs correctly note, courts in the Fourth Circuit frequently permit FLSA notices to be distributed via text and email, and the Court does not find a compelling reason why notice in this matter should be limited to postal mail. (Mot. Notice at 21); see Biscardi, 2023 WL 155238, at *5.

But the Court agrees with GEICO regarding its objection to Plaintiffs' use of a standalone website. In other cases where courts in this district have approved dissemination of notice via website, Plaintiffs have justified their need for a website by alleging that their employer's records may be unreliable or incomplete. See, e.g., Mendoza, 2016 WL 3440007 at *22 (noting that plaintiffs were justified in providing notice through a website because they claimed "that the employee records maintained by defendants may not be a reliable source for contact information"); Montoya, 2008 WL 554114, at *4 (permitting plaintiffs to use a website to disseminate notice in the event that the defendant was "unable to provide . . . plaintiffs with a list of former employees"). As GEICO points out, the potential plaintiffs in this case are part of a "non-transient workforce, and many . . . have worked with GEICO for years or even decades." (Opp'n Mot. Notice at 33). Because Plaintiffs have not alleged any facts to suggest that GEICO will not have relevant employee contact information, the Court expects that Plaintiffs should not have difficulty identifying putative class members. Therefore, the Court denies Plaintiffs' request for a standalone website.

Plaintiffs ask the Court to order GEICO to produce a list of Special Investigators including their names, addresses, telephone numbers, email addresses, work locations, dates of employment, and "the last four digits of Social Security numbers for individuals whose notices are returned undeliverable," within 14 days of the date of this Order. (Mot. Notice at 22–23). Of that list, GEICO appears to only contest Plaintiffs' request for telephone numbers and email addresses. (Opp'n Mot. Notice at 33). As indicated earlier, courts typically permit notices to be sent via postal mail, email, and text. See Biscardi,

2023 WL 155238, at *5. Likewise, the Court finds that requests for information regarding dates of employment and work locations are commonly authorized in FLSA cases in order to assist with the notification and opt-in process. See id. at 6; see, e.g., McCoy v. Transdev Servs., Inc., No. DKC 19-2137, 2020 WL 2319117, at *5 (D.Md. May 11, 2020) (ordering production of dates and locations of employment). And at least one other Court has ordered an employer to produce the last four digits of Social Security numbers when potential collective members' notices were returned as undeliverable. See McCoy, 2020 WL 2319117, at *5. Accordingly, the Court will direct GEICO to provide the requested contact information to Plaintiffs within 14 business days from the date of this Order.

The Court finds that Plaintiffs' request to send a reminder notice halfway through the opt-in period by "postcard, email, and text message" excessive and unnecessary for effective notice. (Mot. Notice at 21). While reminder notices are not without precedent, see Sarahong v. Smartlink, LLC, No. BPG 22-328, 2022 WL 2065930, at *3 (D.Md. June 8, 2022), some Courts in this district have noted that "distribution of reminder notices by all three methods of distribution . . . may give the appearance of judicial endorsement of the litigation." Kneppar, 2024 WL 1156406, at *6; see also Biscardi, 2023 WL 155238, at *5 (permitting "the sending of one reminder notice through mail and email"). As such, the Court will authorize Plaintiffs to send a reminder notice by postcard and email only, 45 days before the end of the 90-day opt-in period.

### d.    Equitable Tolling

Plaintiffs submit that the Court should "toll the statute of limitations for all members of the Collective from May 14, 2024, the date on which Plaintiffs filed their motion,

through the date the Court enters an Order on the motion." (Mot. Notice at 23). GEICO argues that Plaintiffs' request is without merit. (Opp'n Mot. Notice at 33–36). The Court agrees with GEICO.

The statute of limitations for a FLSA claim is generally two years; however, "that period is extended to three years if a plaintiff can show that his employer's violation . . . was willful." Carrera v. E.M.D. Sales, Inc., 75 F.4th 345, 349 (4th Cir. 2023). Plaintiffs here allege that GEICO's violations were willful and intentional. (Am. Compl. ¶ 59). Therefore, the three-year statutory period applies.

 Equitable tolling is appropriate when "extraordinary circumstances beyond plaintiffs' control [make] it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). For instance, at the outset of the COVID-19 pandemic when "many deadlines in civil cases [had] been extended," this Court found equitable tolling appropriate within the context of conditional certification. McCoy, 2020 WL 2319117, at *5. But generally, the statute of limitations on an FLSA claim "is not tolled on an individual employee's claim until that employee opts into the class."[28] Alderoty, 2015 WL 5675527, at *5.

Plaintiffs cite case law to support their proposition that equitable tolling is "commonly granted during the pendency of a motion for conditional certification." (Mot. Notice at 23). However, most of the cases cited by Plaintiffs are distinguishable. See

---

[28] This is largely why "early notice to similarly situated individuals, even before a final determination on class certification, is necessary to allow them to timely assert their claims." Alderoty v. Maxim Healthcare Srvcs., Inc., No. TDC 14-2549, 2015 WL 5675527, at *5 (D.Md. 2015).

Craighead v. Full Citizenship of Md., Inc., No. PX 17-595, 2018 WL 925416, at *4 (D.Md. Feb. 16, 2018) (tolling the statute of limitations because the Court gave parties "additional time to meet and confer on the proper contents of the notice to be disseminated"); Ruffin v. Entm't of the E. Panhandle, No. JPB 11-19, 2012 WL 28192, at *3 (N.D.W.Va. Jan. 5, 2012) (granting Plaintiff's Motion for Equitable Tolling of FLSA statute of limitation pending a decision on a separate motion submitted by plaintiff). In McGlone v. Contract Callers, Inc., the Court noted that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance" if it would result in inequitable circumstances. 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012) (emphasis added and quotation omitted).

Here, Plaintiffs have failed to demonstrate that equitable tolling is warranted or that the lack thereof would result in inequitable circumstances. Therefore, the Court will deny this request. Accordingly, the Court will authorize Plaintiffs to send notice to Special Investigators who worked for GEICO within the three years prior to the date of this Order.[29]

In sum, GEICO will have 14 business days from the date of this Order to produce the requested contact information[30] for members of the putative collective who were employed by GEICO within the statutory period. The Court will also authorize initial

---

[29] To the extent that Plaintiff Sowell has executed a tolling agreement with GEICO, (Am. Compl. ¶ 32), the Court will uphold this agreement. Derrickson v. Circuit City Stores, Inc., 84 F.Supp.2d 679, 685 (D.Md. 2000) ("Agreements to toll applicable statutes of limitations are not unusual and are generally upheld.") (collecting Fourth Circuit cases).

[30] Contact information shall be produced in a usable format and include: full names, addresses, telephone numbers, email addresses, work locations, dates of employment, and the last four digits of Social Security numbers for individuals whose notices are returned undeliverable. (Mot. Notice at 22).

distribution of Plaintiffs' proposed notice form to collective members by U.S. mail, email, and text message; and authorize one reminder notice to be sent by postcard and email halfway before the end of the 90-day opt-in period.[31]

## D.   **Motions to Seal**

Plaintiffs' Motion to Seal (ECF No. 52) and GEICO's Motion to Seal (ECF No. 66) will be denied.

There is a well-established common law right to inspect and copy judicial records and documents. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). Local Rule 105.11 (D.Md. 2023), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The Rule balances the public's common law right to inspect and copy judicial records and documents with competing interests that sometimes outweigh the public's right. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984).

---

[31] The Court notes GEICO's request to "confer over the content of Plaintiffs' proposed form and content notice." (Opp'n Mot. Notice at 33). The proposed conference period is not necessary because Plaintiffs have included their proposed notice with their Motion, (ECF Nos. 50-13 through 50-15), and it would only cause further delay in the issuance of notices to potential plaintiffs. See Kneppar v. Elevance Health Companies, Inc., No. MJM 23-863, 2024 WL 1156406, at *6 n.2 (D.Md. Mar. 18, 2024).

Here, Plaintiffs seek to seal content that GEICO has previously denoted as confidential and proprietary "policy documents related to employee compensation and performance evaluations." (Pls.' Mot. Seal at 2, ECF No. 52). Because Plaintiffs solely rely on GEICO's designation of the documents as confidential and proprietary as justification for their Motion to Seal, (id. at 1), the Court finds the Motion devoid of sufficient factual support as required by Local Rule 105.11 to explain why these policy excerpts are incapable of redaction or to justify sealing these exhibits in their entirety. See Graham v. Famous Dave's of Am., Inc., No. DKC 19-0486, 2020 WL 5653231, at *17 (D.Md. Sept. 23, 2020) (finding Plaintiff's motion to seal declaration and exhibits based on Defendant's designation of the documents as "confidential" insufficient to satisfy the specific factual representations requirement under Local Rule 105.11). Accordingly, either party will have fourteen (14) days to file a renewed motion to seal with redactions to the following exhibits: Performance Appraisal Standards, ECF No. 51-1; Excerpts from HR Handbook, ECF No. 51-2; and Excerpts from HR Supervisor's Guide, ECF No. 51-3, or to explain why these documents must be sealed in their entirety. In the interim, these exhibits will remain temporarily under seal. If neither party moves to seal nor redact within this timeframe, the exhibits will be unsealed.

GEICO moves to seal portions of its Associate Handbook and internal job descriptions. (Def.'s Mot. Seal at 1–2, ECF No. 66). Without more, GEICO's argument that the documents refer to "confidential and proprietary business information," (id. at 2), is insufficient to satisfy Local Rule 105.11. Covington v. Union Memorial Hosp., No. DKC 22-2655, 2024 WL 3784539, at *35 (D.Md. Aug. 13, 2024) (finding defendant's motion to

seal insufficient when defendants relied on "conclusory statements that the exhibits contain proprietary information, [and] that their disclosure could lead to public embarrassment") (internal quotations omitted); see also Butler v. DirectSAT USA, LLC, 307 F.R.D. 445, 456 (D.Md. 2015) (finding defendants' argument that excerpts of employee handbooks or policy manuals should be sealed because they contain proprietary business information insufficient grounds under Local Rule 105.11 to justify sealing). As such, GEICO will have fourteen (14) days to file a renewed motion to seal with redacted versions of the following exhibits: Senior Field Security Investigator Job Description, ECF No. 63-2; Lead Security Investigator Job Description, ECF No. 63-3; Internal Security Investigator Job Description, ECF No. 63-4; and Excerpts of GEICO Assoc. Handbook, ECF No. 63-5, or, alternatively, explain why the documents must be sealed in their entirety. In the interim, the exhibits will remain temporarily under seal. If GEICO does not move to seal nor redact within this timeframe, the exhibits will be unsealed.

### III.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part GEICO's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 48). GEICO's Motion to Dismiss Amended Complaint (ECF No. 48) is granted to the extent it seeks dismissal of Claims Two, Three, Four, and Five of the Amended Complaint. GEICO's Motion to Dismiss Amended Complaint (ECF No. 48) is otherwise denied. GEICO shall answer the remaining claims of the Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. The Court denies GEICO's Motion to Strike Declaration Testimony (ECF No. 64). The Court also denies Plaintiffs' Motion to Seal

(ECF No. 52) and GEICO's Motion to Seal (ECF No. 66). Further, the Court grants in part and denies in part Plaintiffs' Motion for Court-Authorized Notice under 29 U.S.C. § 216(b) (ECF No. 50). Plaintiffs' proposed notice and distribution plan is approved subject to the modifications described herein. A separate Order follows.

Entered this 5th day of November, 2024.

                                          _____/s/_____
                                          George L. Russell, III
                                          Chief United States District Judge